AUG 2 5 2015

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

GREGORY SHAWN MERCER,               )
                                    )
          Plaintiff,                )
     v.                             )          Civil Action No. 1:15-cv-302
                                    )
FAIRFAX COUNTY CHILD PROTECTIVE     )
SERVICES, *et al.*,                 )
                                    )
          Defendants.               )
                                    )

### MEMORANDUM OPINION

This matter is currently pending before the Court on motions to dismiss by several of the

Defendants: Fairfax County Child Protective Services, Fairfax County Department of Code

Compliance, Jack Blair, Elizabeth Perry, Tanya E. Powers, Latycia Tanks, Kerry Allander, and

Kenneth Houtz. Dkt. Nos. 16, 18, 41. The matter has been fully briefed the parties, and on

August 21, 2015, the Court heard oral argument. For the reasons stated in open court, as well as

those set forth below, the motions will be granted.

### I. Background[1]

This controversy arises out of two unrelated incidents between pro se Plaintiff Gregory

Shawn Mercer and various government officials and entities in Virginia. The first event was a

traffic stop that occurred on June 9, 2006. In that stop, Defendant Houtz issued Mercer a

summons for stopping on an interstate highway without having an emergency or medical

---

[1] Because this matter is before the Court on a motion to dismiss, the following facts are drawn from the Complaint and accepted as true. *Tobey v. Jones*, 706 F.3d 379, 383 (4th Cir. 2013). Many of the facts have been drawn from the exhibits attached to the Complaint, which the Court "may properly consider … 'so long as they are integral to the complaint and authentic.'" *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (citations omitted). As is evident from Mercer's allegations, the agency reports are integral to the Complaint and authentic, having been received pursuant to his Virginia Freedom of Information Act ("FOIA") request.

problem. Mercer was given the summons to sign, and while he was signing, Houtz exclaimed, "You ripped the pen out of my hand!" Second Am. Compl. ¶ 36. Houtz then removed Mercer from his car and called Defendant Allander "to determine if the Trooper could arrest the Plaintiff." *Id.* ¶ 37. Mercer was then arrested and charged with felony assault of a police officer. The charge was later reduced to a misdemeanor.

On March 27, 2007, Mercer was convicted of the misdemeanor charge after a two-day jury trial. He appealed his conviction to the Court of Appeals of Virginia, which affirmed his conviction. He then appealed to the Supreme Court of Virginia, which dismissed his appeal. He subsequently filed a petition for a writ of certiorari with the Supreme Court of the United States. Mercer's criminal case was finally resolved on July 7, 2010 when the United States Supreme Court denied his petition for rehearing.

As to the second set of events, in January 2013, the Fairfax County Department of Code Compliance ("DCC") began investigating a complaint that Mercer's home, in which his two children resided with him part-time, was unsanitary and hoarded. On January 23, 2013, LaTycia Tanks, a DCC employee, went to the home to conduct an inspection. When no one answered the door, Tanks left a business card. Later that day, Mercer called Tanks and wanted to know the reason for the visit. Upon learning the reason, Mercer requested that Tanks call him back in two weeks to schedule the inspection, as he was going through a divorce. When she eventually called, Mercer informed her that he would not schedule an inspection until he received a response to his Virginia FOIA request for a copy of the DCC complaint.

At some point, Mercer scheduled an inspection "at FCDCC insistence." Second Am. Compl. ¶ 5. On March 5, 2014, Mercer called DCC employee Jack Blair to reschedule the inspection. In this telephone conversation, Blair informed Mercer "that he was notifying FCCPS

2

[Fairfax County Child Protective Services] of 'allegations.'" *Id.* The next day, Fairfax County Child Protective Services ("CPS") social worker Tanya Powers went to Mercer's daughters' school to interview them. Within two hours, she arrived at Mercer's front door and requested to inspect the home. Mercer asked her if the inspection could be rescheduled, upon which she told him "that if the inspection could not be conducted immediately, Plaintiff's children would be removed from Plaintiff's custody and placed with Foster Care." *Id.* ¶ 7. "Under duress and fearing for his children," Mercer consented to the inspection. *Id.*

During the inspection, Powers took pictures of the interior of the home, over Mercer's objection, "for the benefit of FCDCC." *Id.* At the end of the inspection, she advised Mercer that she had concluded the allegations in the DCC complaint were not supported. Mercer was apparently "very fixated on who the complainant was," but Powers informed him she could not reveal the individual's identity. Compl., Ex. 1. Powers then left the home "intending to unlawfully share her 11 photographs with FCDCC at a later time and/or date." *Id.* Shortly thereafter, Mercer cancelled the DCC inspection. A few weeks later, on March 25, 2014, Tanks issued him a DCC Notice of Violation concerning the exterior of his house.

Based on these events, on March 6, 2015, Mercer filed a complaint in this Court alleging that various Fairfax County and Virginia officials violated his rights under both the Virginia and United States Constitutions. Mercer subsequently filed two amended complaints. Shortly thereafter, on June 1, 2015 and June 11, 2015, respectively, several Defendants filed the instant motions to dismiss. Mercer then filed a motion for leave to amend his complaint yet again, which the Court granted. On August 3, 2015, Mercer filed the Second Amended Complaint that is now before the Court, which added an additional count of fraud against all named Defendants

3

as well as a defamation claim against Houtz, Allander, and the Defendants who are members of

the Virginia judiciary.

## II.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992). The Court must accept as true all well-pleaded factual allegations and draw all reasonable

inferences in Plaintiff's favor. *Tobey v. Jones*, 706 F.3d 379, 383 (4th Cir. 2013). To survive a

motion to dismiss, the complaint "must contain sufficient factual matter . . . to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "establish[es] facial plausibility

by pleading factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville*, 708 F.3d

549, 554 (4th Cir. 2013) (citation and internal quotation marks omitted).    Moreover, a plaintiff

must provide "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555.

Because Mercer proceeds here pro se, his pleadings are entitled to liberal construction.

*See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted). However,

"[p]rinciples requiring generous construction of *pro se* complaints are not ... without limits."

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "Even *pro se* plaintiffs must

recognize Rule 8's vision for a system of *simplified pleadings* that give notice of the general

claim asserted, allow for the preparation of a basic defense, [and] *narrow the issues* to be

litigated . . . ." *Sewraz v. Guice*, No. 3:08-cv-35, 2008 WL 3926443, at *1 (E.D. Va. Aug. 26,

4

2008) (emphasis in original) (citations and internal quotation marks omitted). Under these standards, the Court will consider the instant motions.

## III.   Discussion

Three sets of Defendants have moved to dismiss the claims against them—CPS and DCC ("the Agencies"); Powers, Perry, Blair, and Tanks ("the County Employees"); and Houtz and Allander ("the Police Officers"). Because each set of Defendants raises different bases for dismissal, the Court will address each motion separately.

### A.   *Claims Against the Agencies*

The Agencies have moved to dismiss the claims against them on the ground that they are *non sui juris*—that is, they lack the legal capacity to be sued. *See Black's Law Dictionary* 1158 (9th ed. 2009). Under Fed. R. Civ. P. 17(b)(3), "[c]apacity to sue or be sued is determined . . . by the law of the state where the Court is located." The Agencies contend that "under Virginia law ... agencies of a locality cannot be sued." Agencies' Mem. Supp. Mot. Dismiss ("Agencies' Mot. Dismiss") 2 (citing *Davis v. City of Portsmouth*, 579 F. Supp. 1205, 1210 (E.D. Va. 1983), *aff'd*, 742 F.2d 1448 (4th Cir. 1984) (dismissing Planning Commission of City of Portsmouth because it had "not been given the capacity to be sued by either state or local mandate")).

Mercer argues that the Supreme Court has explicitly held that Congress "intend[ed] municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Although he is technically correct, the Fourth Circuit has confirmed that Fed. R. Civ. P. 17(b)(3) qualifies the liability of local government units under § 1983. *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 393 (4th Cir. 2014) (alternatively affirming dismissal of § 1983 claim against state's attorneys office pursuant to Fed. R. Civ. P. 17(b)(3) because it is "not a suable entity"

under Maryland law); *see also Bombard v. Volp*, 44 F. Supp. 3d 514, 527–28 (D. Vt. 2014) (dismissing claims against municipal police department under the Rule because it was "not aware of any statute or ordinance in Vermont that permits a suit against" it, and therefore it did "not have the capacity to be sued").

Here, Mercer has sued the Agencies under § 1983 for alleged violations of his constitutional rights. Counsel for the Agencies has represented that DCC is a department of Fairfax County that was established by the County's Board of Supervisors pursuant to Va. Code Ann. § 15.2-821. CPS was organized under the Fairfax County Department of Social Services, which was also established by statute. Va. Code Ann. § 15.2-823 (2012). Defense counsel represents that, like in *Bombard* and *Owens*, no statutory provisions of the Code of Virginia permit suit against county government agencies such as DCC and CPS. The Court is likewise unaware of any statute authorizing suit against these entities. Accordingly, the Agencies do not have the capacity to be sued and Mercer's claims against them will be dismissed with prejudice.

### B. Claims Against the County Employees

The County Employees have moved to dismiss the claims against them for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). The Court will address the validity of each of Mercer's claims against these individuals in turn.

#### i. Claims Under § 1983

Mercer has alleged that his Fourth Amendment right to be free from unreasonable searches and seizures was violated when, on March 6, 2014, CPS employee Tanya Powers obtained his consent to enter his home by "threaten[ing] to place Plaintiff's children in Foster Care if the inspection could not be performed immediately." Second Am. Compl. ¶¶ 7, 15. He also alleges she engaged in an unlawful search by taking photographs of his home while he

objected, intending to share those photographs with DCC. *Id.* ¶ 7. For the reasons stated in open court, the Court will allow Mercer to re-plead his Fourth Amendment claims to include additional facts showing that CPS was acting in concert with DCC to violate his rights if, of course, he has a good faith basis for doing so.

Mercer has also alleged that his Sixth Amendment rights were violated when: (1) Tanks told him that he would not be permitted to learn the identity of the complainant in the DCC complaint against him; (2) he had a meeting with Tanks and Blair, who were supervised by Perry, and they failed to allege "probable cause for any crime Plaintiff committed"; (3) Blair informed him "that he was notifying FCCPS of 'allegations'"; and (4) refused to let him see the DCC complaint during her inspection of his home. Second Am. Compl. ¶¶ 5, 7, 19–21.

The Sixth Amendment provides that "*[i]n all criminal prosecutions*, the accused shall enjoy the right … to be informed of the nature and cause of the accusation [and] to be confronted with the witnesses against him." U.S. Const. amend. VI (emphasis added). It is readily apparent that Mercer's Sixth Amendment claims fail, as he has not alleged any criminal charges against him related to these inspections, or even any action taken by law enforcement officers. His claim under Article I, Section 8 of the Virginia Constitution similarly fails because the rights provided in that section are also limited to individuals subject to "criminal prosecutions[.]" Va. Const., Art. I, Sec. 8; *Hood v. Commonwealth*, 280 Va. 526, 539 (2010) (holding section only applies to criminal prosecutions). These claims will therefore be dismissed with prejudice.

    *ii.   Fraud Claim*

In his Second Amended Complaint, Mercer added a fraud count against all named Defendants. The alleged fraud "is the misrepresentation that Justice can be had by a Virginia victim of Law Enforcement Misconduct when that Code Enforcement Officers allege the

unknown communicated to them as Hearsay . . . ." Second Am. Compl. ¶ 50. Such an allegation

obviously fails to plead the "false representation of material fact" necessary to sustain a fraud

claim, much less with the heightened specificity mandated by Fed. R. Civ. P. 9(b). *Eliot v. Shore*

*Stop, Inc.*, 238 Va. 237, 243 (1989); *see also Sales v. Kecoughtan Hous. Co.*, 279 Va. 475, 481

(2010). As stated in open court, Mercer's theory of fraud does not present a material

misrepresentation or any other cause of action. This claim will therefore be dismissed with

prejudice.

### C. Claims Against the Police Officers

Defendants Houtz and Allander have also moved to dismiss the claims against them,

reasoning that the claims: (1) fail to satisfy the pleading requirements of Rules 8(a)(2), 10(b),

and 12(b)(6) of the Federal Rules of Civil Procedure; (2) are barred by the Eleventh Amendment;

(3) are barred under the *Rooker-Feldman* doctrine; (4) are barred by the statute of limitations;

and (5) fail under the doctrine of qualified immunity. The Court will consider each of the claims

against the officers below.

#### i.   Claims Under § 1983

Mercer's § 1983 claims against the officers are easily resolved under the applicable

statute of limitations. Based on the allegations in the Amended Complaint, Mercer's claims

arose out of a traffic stop that occurred on June 9, 2006. In that stop, Mercer alleges that

Defendant Houtz issued him a summons for stopping on an interstate highway without having an

emergency or medical problem. Mercer was given a summons to sign, and while he was signing,

Houtz exclaimed, "You ripped the pen out of my hand!" Second Am. Compl. ¶ 36. Houtz then

removed Mercer from his car and called Defendant Allander "to determine if the Trooper could

arrest the Plaintiff." *Id.* ¶ 37. Mercer was then arrested and charged with felony assault of a

police officer. The charge was later reduced to a misdemeanor. On March 27, 2007, he was convicted of the misdemeanor charge after a two-day jury trial. This criminal proceeding was finally resolved on July 7, 2010 when the United States Supreme Court denied his petition for rehearing.

Because actions under § 1983 are properly regarded as personal injury actions, Virginia's two-year statute of limitations applies. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985) and Va. Code § 8.01-243(A)). Under federal law, a cause of action accrues when a plaintiff "knows or has reason to know of the injury which is the basis of the action." *E.g.*, *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975) (citation omitted). The Court finds that Mercer's claim against the officers likely arose on the date of the traffic stop. Even when construing the facts in the light most favorable to Mercer, however, he unquestionably knew or had reason to know of his injury on July 7, 2010—the day his criminal proceeding ultimately concluded. As a result, he was required to file any § 1983 claim he had against the officers on or before July 7, 2012. This he has failed to do.

Accordingly, because it is evident from the face of the Complaint that his § 1983 claims against the Police Officers are time-barred, they will be dismissed with prejudice under Rule 12(b)(6). *See Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (citations omitted) ("[W]here the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint."); *Pantry Pride Enters., Inc. v. Glenlo Corp.*, 729 F.2d 963, 965 (4th Cir. 1984) (affirming dismissal of action under Rule 12(b)(6) as time-barred).

9

ii.  *Fraud Claim*

In his Second Amended Complaint, Mercer added a fraud count against the officers, alleging that fraud occurred through "the misrepresentation that Justice can be had by a Virginia victim of Law Enforcement Misconduct when ... Police Officers allege Assault and Battery in a State where Law Enforcement Misconduct is ignored, denied, and hidden as State Policy backed by Legislation, Case Law, and Tradition." Second Am. Compl. ¶ 50. More specifically, he alleges that Houtz "misrepresented that Plaintiff struck him physically" in his criminal trial before both the Fairfax County General District Court and the Fairfax County Circuit Court in 2006 and 2007, respectively. *Id.* ¶ 45. He further alleges that Houtz and Allander "intimidated" the court reporters to alter the transcript and backup tape in these trials. *Id.*

In their reply, Houtz and Allander essentially repeat the County Employees' argument on the issue. As above, the allegations fail to meet the heightened pleading requirements of a fraud claim and, under Mercer's theory of fraud, amendment would be futile. In any event, the fraud allegedly perpetrated by the officers occurred during Mercer's 2006 and 2007 trials. Accordingly, the fraud claims against the officer are time-barred under Virginia's one-year statute of limitations. *J.F. Toner & Son, Inc. v. Staunton Prod. Credit Ass'n*, 237 Va. 155, 158 (1989) (reaffirming prior holdings that "one-year limitation period governs actions for fraud"). These claims will therefore be dismissed with prejudice.

iii.  *Defamation Claim*

Mercer also added a defamation claim against Houtz and Allander based on Houtz's allegedly perjured testimony during Mercer's 2007 trial for assault. Given that "it is well-settled that words spoken or written in a judicial or quasi-judicial proceeding are absolutely privileged when relevant to the subject matter of the proceeding," Mercer fails to state a claim for

10

defamation. *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 918–919 (E.D. Va. 2004) (citations omitted).

It is also evident that the claim is untimely under Virginia's one-year statute of limitations. Va. Code. Ann. § 8.01-247.1. A cause of action for defamation arises on the date of publication. *Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 334 (4th Cir. 2005) (citing *Jordan v. Shands*, 255 Va. 492, 497–98 (1998)). In this case, the allegedly defamatory statements occurred during the criminal proceeding that definitively terminated on July 7, 2010. Because the instant Complaint was not filed until nearly five years later, Mercer's defamation claim is time-barred and it will be dismissed with prejudice.

### D. Claims Against the Virginia Judges and Justices

Mercer has also sued various members of the Virginia Judiciary who had some role in his criminal conviction and its subsequent affirmance. For the reasons stated by the Court during oral argument, particularly its comments about the role of the General Assembly in the appointment of Virginia judges, none of the allegations state a cause of action against these Defendants. For the same reasons, the Court finds that amendment of these claims would be futile.

The Court also finds that it lacks subject matter jurisdiction over these claims under the *Rooker-Feldman* doctrine, which precludes the district courts from exercising jurisdiction over a matter that is properly regarded as an appeal from a state court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). The Supreme Court has emphasized that application of the doctrine is limited to cases in which a party that has lost in state court "seek[s] what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the *state judgment itself violates the loser's federal*

rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–1006 (1994) (emphasis added); *accord Howlett v. Rose*, 496 U.S. 356, 369–370, n. 16 (1990) (citing *Rooker* and *Feldman* for "the rule that a federal district court cannot entertain an original action *alleging that a state court violated the Constitution* by giving effect to an unconstitutional state statute" (emphasis added)).

In this case, Mercer alleges, for example, that the Virginia Judges and Justices who presided over his 2007 criminal conviction and subsequent appeal "fraudulently protect[ed] State Law Enforcement out of fear Officers therefrom will interfere in Judicial Elections within the General Assembly." Second Am. Compl. ¶ 4. He also alleges that Judge Kathleen Mackay, who presided over his criminal trial in the Fairfax County Circuit Court, "placed a Gag Order on [the court reporter] … in order to protect the Virginia State Trooper involved." *Id.* ¶ 43. He later alleges in Count I that he was "falsely convicted of Simple Assault and Battery" when his due process rights were denied by the trial judge "in a supreme display of Judicial Incompetence and Fraud and on appeal before the most of the five other Defendants . . . ." *Id.* ¶ 47. It is thus clear that, like in *Rooker* and *Feldman*, Mercer seeks to re-litigate his criminal case in this Court after losing in the state courts. Accordingly, because the claims against the Judges and Justices are barred by the *Rooker-Feldman* doctrine, the Court will dismiss them with prejudice *sua sponte* pursuant to Fed. R. Civ. P. 12(h)(3).

## III.    Conclusion

For the foregoing reasons, the Court will grant all three motions to dismiss. In sum, all of the claims against CPS, DCC, Houtz, Allander, and the Virginia Judges and Justices will be dismissed with prejudice. The defamation claims and the claims under the Sixth Amendment of the United States Constitution and Article I, Section 8 of the Virginia Constitution will also be dismissed with prejudice.

Mercer will be permitted, however, to re-plead his Fourth Amendment claims against the County Employees in a Fourth Amended Complaint.

An appropriate Order shall issue.

August 25, 2015

Alexandria, Virginia

/s/

Liam O'Grady
United States District Judge

13